# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-21422-GAYLES

ODALVIS FERNANDEZ and
JULIO RODRIGUEZ,

     Plaintiffs,

     v.

UNITED STATES OF AMERICA,

     Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant United States of America's Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion") [ECF No. 16]. The Court has reviewed the Motion, the record, and the applicable law and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## I.     BACKGROUND

Plaintiffs Odalvis Fernandez ("Fernandez") and Julio Rodriguez ("Rodriguez") (collectively "Plaintiffs") bring this negligence action against Defendant United States of America ("Defendant") pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674 ("FTCA"), for injuries sustained by Fernandez while swimming in Biscayne National Park. Plaintiffs allege that on July 12, 2015, they set out on their boat for a day of leisure in Biscayne National Park. After meeting some friends, Plaintiffs anchored their boat just outside the designated swimming area at Boca Chita Key, an island within Biscayne National Park. Plaintiffs allege that the designated swimming area was demarcated by white buoys with a red "X" to signify that vessels were prohibited from entering the swimming area. While wading from Plaintiffs' boat through the

designated swimming area towards the Boca Chita Key beach, Fernandez's foot was pierced by a piece of rebar protruding from a submerged piece of concrete.

Defendant moves to dismiss Plaintiffs' Amended Complaint [ECF No. 15] under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on its immunity from suit under the FTCA. Defendant argues that it is entitled to immunity pursuant to Florida's recreational use statute, Fla. Stat. § 375.251, because Fernandez's injuries occurred in a distinct area provided to the public for outdoor recreational purposes where no commercial activity takes place. Conversely, Plaintiffs argue that Defendant is not entitled to the immunity afforded by the statute because Defendant derives revenue from fees charged to patrons in other distinct areas of Biscayne National Park.

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A district court must have jurisdiction under at least one of the three types of subject-matter jurisdiction: (1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Butler v. Morgan*, 562 F. App'x 832, 834 (11th Cir. 2014) (citation omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted).

"[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augustana-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). A facial challenge provides Plaintiff with similar safeguards to those of a Rule 12(b)(6) motion, as "the court must consider the allegations in the plaintiff's complaint as

true." *Id.* In considering a facial attack on the complaint, the court must look to whether the plaintiff has "sufficiently alleged a basis of subject matter jurisdiction." *Id.* The Court treats the Motion as a facial attack on the Complaint as the Defendant does not explicitly assert a factual challenge and does not challenge the Complaint's allegations with extrinsic evidence.

## III.   DISCUSSION

The FTCA provides that the United States may be held liable for money damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" in the same manner and to the same extent as a private person under like circumstances. 28 U.S.C. § 1346(b)(1). However, Florida's recreational use statute provides a shield against liability for landowners who make their property available to the public for outdoor recreational purposes against persons who may be injured on their property. § 375.251(1), Fla. Stat. The pertinent portions of the recreational use statute state:

> (1) The purpose of this section is to encourage persons to make land, water areas, and park areas available to the public for outdoor recreational purposes by limiting their liability to persons using these areas and to third persons who may be damaged by the acts or omissions of persons using these areas.

> (2)(a) An owner or lessee who provides the public with an area for outdoor recreational purposes owes no duty of care to keep that area safe for entry or use by others, or to give warning to persons entering or going on that area of any hazardous conditions, structures, or activities on the area. An owner or lessee who provides the public with an area for outdoor recreational purposes:

> > 1. Is not presumed to extend any assurance that the area is safe for any purpose;

> > 2. Does not incur any duty of care toward a person who goes on the area; or

> > 3. Is not liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on the area.

*See* § 375.251(1)-(2)(a), Fla. Stat. Under controlling Eleventh Circuit precedent, Florida's recreational use statute applies to land owned by the United States within the State of Florida. *See Terrell v. United States*, 783 F.2d 1562, 1567 (11th Cir. 1986); *Kleer v. United States*, 761 F.2d 1492, 1493-94 (11th Cir. 1985). The limitation on liability applies "if no charge is made for entry to or use of the area for outdoor recreational purposes and no other revenue is derived from patronage of the area for outdoor recreational purposes." § 375.251(2)(c), Fla. Stat. (2012).

In *Kleer,* the plaintiff brought suit against the United States after being injured while diving off a bridge in an undeveloped section of Ocala National Forest. *Kleer,* 761 F.2d at 1493. The Eleventh Circuit analyzed whether Florida's recreational use statute would bar the plaintiff's claim where a portion of the property was used for commercial purposes and another part, where the injury occurred, was not used for any commercial activity. *Id.* at 1494. Relying on the construction of the statute set forth in *Abdin v. Fischer*, 374 So. 2d 1379 (Fla. 1979), and *Sea Fresh Frozen Products, Inc. v. Abdin*, 411 So. 2d 218 (Fla. 5th DCA 1982), the Eleventh Circuit determined that commercial activity occurring in one distinct area of the property would not preclude application of the immunity statute where the injury occurred in another distinct area where no commercial activity took place. *Id.* at 1495. The court rejected the plaintiff's argument[1]– that a landowner could invoke the statute's protection only if no commercial activity occurred on the entire property– as contrary to the intent of the statute, which is to encourage landowners to make their land available to the public for recreational purposes. *Id.; see also Zuk v. United States*, 698 F. Supp. 1577, 1582 (S.D. Fla. 1988) (holding that plaintiff's claims were barred under § 375.251, Fla. Stat., where no fee was charged to enter the park and "no commercial activity occurred in the *distinct* area" where plaintiff was injured) (emphasis added).

---

1    This is the same argument advanced by Plaintiffs in the instant case.

Approximately twenty-seven years after the Eleventh Circuit's opinion in *Kleer,* Florida's recreational use statute was amended in 2012 to state in pertinent part as follows:

> The Legislature recognizes that an area offered for outdoor recreational purposes may be subject to multiple uses. The limitation of liability extended to an owner or lessee under this subsection applies only if no charge is made for entry to or use of the area for outdoor recreational purposes and no other revenue is derived from patronage of the area for outdoor recreational purposes.

§ 375.251(2)(c), Fla. Stat. (2012). The statute was also amended to include a definition of the term "area." *See* § 375.251(5)(a), Fla. Stat. (2012) ("'Area' includes land, water, and park areas."). Plaintiffs argue that the 2012 amendment eliminates the liability protection offered to landowners if commercial activity occurs on any part of the property. Plaintiffs contend that the 2012 amendment was intended to eliminate any distinction between areas within a parcel where commercial activity takes place and areas where no commercial activity takes place.

The Court finds that Plaintiffs' construction of the statute is unsupported by its plain meaning. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) ("When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete.") (citations omitted). In accordance with *Kleer,* the plain text of the statute "recognizes that an area offered for outdoor recreational purposes may be subject to multiple uses" and therefore liability will not attach unless "revenue is derived from patronage of the area for outdoor recreational purposes." § 375.251(2)(c), Fla. Stat. (2012). Therefore, a plain reading of the statute as whole suggests that liability will not attach unless the injury occurred in the distinct area where revenue is derived from patronage.

However, even if the statute could be deemed ambiguous, the legislative materials referenced by Plaintiffs contain no mention of the Florida Legislature's intent to overrule *Kleer,* the holding of which remained undisturbed for over 26 years. *See* Florida House of Representatives Staff Analysis,

2012 Regular Session, H.B. 313 (May 9, 2012). Indeed, a review of the other 2012 amendments to the statute reveals that the Florida Legislature intend to expand, rather than restrict, the availability of the limitation on liability consistent with the statute's stated purpose of encouraging landowners to make their property available to the public. *See* § 375.251(2)(b), and (3), Fla. Stat. (2012); s*ee also* § 375.061, Fla. Stat. ("The provisions of this act shall be liberally construed in a manner to accomplish the purposes thereof."); § 375.251(1), Fla. Stat. ("The purpose of this section is to encourage persons to make land, water areas, and park areas available to the public for outdoor recreational purposes by limiting their liability to persons using these areas . . . .").

Notably, Plaintiffs did not provide the Court with any legal authority that supports their construction of the statute. Further, the only post-amendment decision[2] interpreting the statute continues to adhere to the binding precedent set forth in *Kleer. See Lopez v. United States*, 13-22427-CIV, 2014 WL 11894429, at *5 (S.D. Fla. June 10, 2014) (holding that plaintiff's claims were barred under the recreational use statute pursuant to *Kleer* because, despite commercial activity occurring elsewhere in Big Cypress Park, his injuries occurred in an area of the park where no commercial activity took place). Under Plaintiffs' construction of the statute, "area" is synonymous with the entirety of Biscayne National Park and "[a]ny revenue derived from the public's use of Biscayne National Park removes the entire park from the protection provided by §375.251." [ECF No. 17, p.8]. Biscayne National Park covers approximately 173,000 acres, the equivalent of approximately 270 square miles. *See Biscayne National Park: Places To Go,* NPS.gov, https://www.nps.gov/bisc/planyourvisit/placestogo.htm, (last visited December 12, 2017). To accept Plaintiffs' reading of the statute, it would suggest that if the United States sold water from a small table in a small distinct area of the park, the United States could be liable for injuries occurring in a

---

2      The recreation use statute was briefly mentioned but not discussed in any detail in *Wills v. United States*, 111 F. Supp. 3d 1277, n.1 (M.D. Fla. 2015).

separate distinct area of the park 200 square miles away from the water stand where no commercial activity took place. The Court declines to adopt Plaintiffs' interpretation as it is not supported by a common sense reading of the statute as a whole, and it is contrary its stated purpose.

It is undisputed by the parties that no fees are charged to enter Biscayne National Park or access Boca Chita Key. *See also* 16 U.S.C. § 410gg-5 ("no fees shall be charged for entrance or admission to the park."). Plaintiffs allege that camping and pavilion rental fees are charged within the Historical District Boundary of Boca Chita Key, a distinct area of Biscayne National Park. *Zuk*, 698 F. Supp. at 1582. However, Plaintiffs also specifically allege that Fernandez's injury occurred in the "designated swimming area" of Biscayne Bay, a distinct area wholly outside of the Historic District Boundary. Critically, Plaintiffs do not allege that a fee was charged to enter or access the designated swimming area where Fernandez was injured or that the United States derives revenue from patronage of the designated swimming area where Fernandez was injured. Therefore, the Court finds that the United States satisfies all criteria set forth in the recreational use statute to qualify for its protection from liability.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss [ECF No. 16] is **GRANTED**. The Plaintiffs' Amended Complaint [ECF No. 15] is **DISMISSED** for lack of subject matter jurisdiction. This action is **CLOSED** and any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of December, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE